UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Terrelle Darnell Oliver,                                                    Civil No. 04-3022 (PAM/RLE)

Plaintiff,

v.                                                              **MEMORANDUM AND ORDER**

City of Minneapolis, a Minnesota
municipal entity; Officer Ruud,
individually and in his capacity as a
Minneapolis Police officer; Officer
Babekuhl, individually and in his capacity
as a Minneapolis Police officer; and
William McManus, successor to Robert
Olsen, former Chief of Police,
personally and individually,

Defendants.

_____

This matter is before the Court on Defendants' Motion for Summary Judgment. For the

reasons that follow, the Motion is granted.

**BACKGROUND**

**A.      The Altercation with Police on June 24, 2002**

The factual background is recounted in the light most favorable to Plaintiff, the non-

moving party. On June 24, 2002, Plaintiff Terrelle Darnell Oliver was sitting on the hood of

a car, having a conversation with two of his friends in the car, which was parked on the corner

of 6th Street North and 33rd Avenue North in Minneapolis. (Woolman Aff. Ex. A at 7 (Oliver

Dep.).) Defendant Officers Ruud and Babekuhl drove up in an unmarked police car. The

officers were patrolling in an area known for narcotics sales with numerous complaints of drug

dealing.  (Woolman Aff. Ex. B at 10 (Ruud Dep.).)   Plaintiff recognized the two officers, who

frequently patrolled the neighborhood and had recently conducted two raids in which Plaintiff

was involved.  (Woolman Aff. Ex. A at 9.)   One of the officers told Plaintiff to come over to

the police car.  (Id. at 10.)   He refused.  (Id.)   The officer  started to get out of the car, and

Plaintiff ran. (Id.) Plaintiff claims he ran because the two officers had been beating him up for

two months without reason.  (Id. at 11.)   The officers ran after Plaintiff.  (Id. at 12.)   They

thought he had a gun or drugs on his person because they saw him holding on to an object in

his waistband as he ran.  (Skarda Aff. Ex. A at 2, 6, 10; Woolman Aff. Ex. B at 10-11.)  Plaintiff

denies that he had drugs or a gun.  (Woolman Aff. Ex. A at 12.)

Plaintiff jumped over a fence and ran through a backyard.  (Id.; Skarda Aff. Ex. A at 6.)

Officer Ruud saw a black and silver object fall from Plaintiff's waistband into the grass.[1]

(Skarda Aff. Ex. A at 6.)   Officer Ruud lost sight of Plaintiff during the chase, but Officer

Babekuhl continued the pursuit.   (Id. at 6, 10.) Plaintiff ran for about three blocks and then

entered the porch of a duplex at 3239 4th Street North.  (Woolman Aff. Ex. A at 12-13; Skarda

Aff. Ex. A at 10.)  He did not know the occupants of the house.  (Woolman Aff. Ex. A at 18.)

After Plaintiff ran on to the porch, he locked the porch door behind him.  (Id. at 14.)

Officer Babekuhl[2] pointed a gun at Plaintiff through the porch window and told him to freeze.

---

[1]   Officer Ruud later returned to the place where he saw Plaintiff drop the black and
silver object, and he recovered a semi-automatic handgun.

[2]   Plaintiff testified that Officer Ruud was the first officer to arrive at the house, but
Plaintiff's counsel has since conceded that it was probably Officer Babekuhl.   The officers'

(Id. at 12-13.)   Instead, Plaintiff ran into the house, shutting the door behind him and locking it.  (Id. at 14, 16.)   A resident of the duplex, who came out on the porch when Plaintiff ran into the house, opened the porch door for Officer Babekuhl.  (Id. at 15.)   The officer told Plaintiff through a window to freeze or he would "shoot the window down."  (Id. at 15.)   Plaintiff dropped to the floor, and Officer Babekuhl kicked in the door.  (Id.)   Other than Plaintiff, the resident's girlfriend and daughter were also in the house.  (Skarda Aff. Ex. A at 10.)   After Officer Babekuhl entered the house, he stepped on Plaintiff's back and said he was going to kick out Plaintiff's gold teeth.  (Woolman Aff. Ex. A at 16.)   Officer Babekuhl then kicked Plaintiff in the jaw while he was lying in a balled-up position.  (Id.)   Officer Babekuhl handcuffed Plaintiff and dragged him toward the door. (Id. at 17.)   Officer Babekuhl held Plaintiff by his arm, face down.  (Id. at 18.) When they reached the door between the house and the porch, Plaintiff stood up with Officer Babekuhl's assistance.  (Id. at 19.)   About that time, Officer Ruud arrived at the scene, but he did not enter the house.  (Id. at 20.)

Once outside, the officers and Plaintiff walked to a waiting squad car.  (Id.)   Plaintiff yelled to his girlfriend, who was standing near the car, to call his lawyer because the police were beating him.  (Id. at 21.)   Plaintiff testified that one of the officers bent him over the

---

reports clarify that it was Officer Babekuhl who chased and initially detained Plaintiff.  (Skarda Aff. Ex. A at 6, 10.)   Officer Ruud did not arrive until just before Plaintiff was handcuffed and escorted to the police car.  (Id.)   Reflecting this version of the facts, Plaintiff has submitted a proposed order to permit amendment of the Complaint to name Officer Babekuhl as a Defendant officer in lieu of the unnamed officers.  Plaintiff's request is granted, and the caption of this Order reflects the Complaint as amended.  For clarity and simplicity, the Court will hereinafter refer to the first officer on the scene as Officer Babekuhl.

trunk of the squad car and slammed his head into the trunk. (Id.) The officer told Plaintiff to shut up. (Id. at 19.) Officer Ruud averred he merely pat-searched Plaintiff and placed him in the car. (Skarda Aff. Ex. A at 6.) The officers did not hit or kick Plaintiff. (Woolman Aff. Ex. A at 21.) The officers transported Plaintiff to the Hennepin County Jail. In the car, Plaintiff asked one of the officers to roll down his window so he could spit out some blood. (Id. at 22.) Plaintiff believed the blood was coming from his ribs. (Id. at 23.)

**B.      Injuries**

On June 26, 2002, two days after the incident, Plaintiff went to the Hennepin County Medical Center. (Woolman Supp'l Aff. Ex. A at 1.) He complained only of pain on his left side. (Id. at 2.) Palpation revealed tenderness on his left lateral chest. (Id. at 3.) He was diagnosed with a chest wall contusion. (Id. at 2.) X-ray results were negative. (Id. at 3.) Plaintiff was discharged approximately three hours later with prescriptions for fifteen tablets of hydrocodone and thirty tablets of ibuprofen. (Id.) At discharge, he was ambulatory and pain free. (Id.)

Plaintiff testified in his deposition that he sustained the following injuries during the altercation on June 24, 2002: his ribs were swollen and almost broken; his face was injured, bruised, and scarred; and his back hurt. (Woolman Aff. Ex. A at 22-23.) Plaintiff claims he has experienced continuous back pain since the incident. However, his back was further injured shortly after the incident when he was shot in the back numerous times. (Id. at 24.) Plaintiff occasionally spits up blood, but he has not sought treatment for this. (Id. at 24-25.) Plaintiff has no additional medical records for any injuries, including back problems or internal

bleeding.    Plaintiff claims he has had nightmares and trouble sleeping since the incident.    (Id. at 23, 28.)

**C.**      **Claims**

The Amended Complaint names as Defendants the City of Minneapolis, Officer Ruud, Officer Babekuhl, and Chief of Police William McManus.    Plaintiff brings claims of assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress.    He also asserts three separate violations of 42 U.S.C. § 1983: excessive force, failure to prevent constitutional violations, and a Monell claim.    Finally, he claims conspiracy to deprive him of his civil rights under 42 U.S.C. § 1985.    Defendants bring this Motion on all claims.

**DISCUSSION**

**A.      Standard of Review**

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). As the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. A party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials, but must set forth specific facts in the record showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik v. Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.      42 U.S.C. § 1983**

Plaintiff claims his constitutional rights were violated. He brings three claims under 42 U.S.C. § 1983: (1) a Monell claim against Defendants City of Minneapolis and Chief of Police William McManus; (2) a failure to prevent claim against all Defendants; and (3) claims

against Defendant Officers Ruud and Babekuhl for alleged violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.

      1.     <u>Monell Claim</u>

A municipality may be liable under § 1983. <u>Monell v. Dep't of Social Servs. of New York</u>, 436 U.S. 658, 694-95 (1978). However, a municipality cannot be liable under the <u>respondeat superior</u> theory. <u>Id.</u> Rather, the municipality must employ a policy or custom that "inflicts the injury" on the plaintiff. <u>Id.</u> A municipal custom or policy requires Plaintiff to demonstrate: (1) the existence of a continuing, persistent, widespread pattern of unconstitutional misconduct by the City of Minneapolis's employees; (2) deliberate indifference to or authorization of unconstitutional conduct by the City of Minneapolis's policymaking officials after notice to the officials of the purported misconduct; and (3) that Plaintiff was injured by acts pursuant to this policy, which was the moving force behind the violation. <u>Mettler v. Whitledge,</u> 165 F.3d 1197, 1204 (8th Cir. 1999).

Plaintiff offers no evidence to support this claim other than his uncorroborated deposition testimony that he recognized the officers from the neighborhood and that they had been beating him for the past two months. This does not constitute a continuing, persistent, and widespread pattern of unconstitutional misconduct by the City of Minneapolis's employees. Further, Plaintiff never gave notice to the City of Minneapolis of purported misconduct, and he has no evidence that the City otherwise received notice of any misconduct. Plaintiff has also failed to show that the City's policymaking officials deliberately disregarded or authorized recurring police misconduct. Finally, Plaintiff has shown no causal link between

the police department's custom or policy and the incident on June 24, 2002.  Because Plaintiff has failed to set forth specific facts demonstrating the fundamental elements of his <u>Monell</u> claim, Defendants' Motion is granted on this point.

Plaintiff also contends that the City of Minneapolis and Police Chief McManus failed to train, supervise, and discipline the officers who allegedly violated Plaintiff's constitutional rights.  Plaintiff must demonstrate that the failure to train evidences a deliberate indifference to his rights.  <u>See, e.g.</u>, <u>City of Canton v. Harris</u>, 489 U.S. 378, 389 (1989).  That is, Plaintiff must show that the City of Minneapolis and Police Chief McManus had notice that the City's procedures were inadequate and likely to result in a violation of Plaintiff's constitutional rights.  <u>See</u> <u>id.</u> at 396.  Plaintiff has offered no evidence that training procedures were inadequate.  The City of Minneapolis's training includes in-service training, a recruit academy covering the proper use of force, instruction on the Police Department's Manual and use-of-force policies, field training including individualized daily training, and training comporting with statutory requirements for annual instruction on the use of force.  (McManus Aff. ¶¶ 9-11.)  Further, Plaintiff has no evidence that the City of Minneapolis or Police Chief McManus had notice that the City's procedures were inadequate or likely to violate constitutional rights.  At best, the facts alleged by Plaintiff show a "one-time negligent administration of the program or factors peculiar to the officer involved in a particular incident."  <u>Bd. of County Comm'rs of Bryan County, Ok. v. Brown</u>, 520 U.S. 397, 408 (1997) (citing <u>City of Canton</u>, 489 U.S. at 390-91).  Because Plaintiff has not shown that the City of Minneapolis and Police Chief

McManus failed to train, supervise, or discipline the officers who allegedly violated his constitutional rights, this aspect of his <u>Monell</u> claim fails as well.

Specifically as to Plaintiff's claim of negligent supervision against Police Chief McManus, Plaintiff has not affirmatively connected McManus's conduct to the acts of the Defendant officers. There is no evidence that Police Chief McManus tacitly approved of or purposely disregarded the alleged conduct. <u>See</u> <u>White v. Holmes</u>, 21 F.3d 277, 280 (8th Cir. 1994) (quoting <u>Bolin v. Black</u>, 875 F.2d 1343, 1347 (8th Cir. 1989)). Similarly, there is no evidence that Police Chief McManus was aware of prior unconstitutional conduct by the Defendant officers. <u>See</u> <u>Jane Doe A v. Special Sch. Dist. of St. Louis County</u>, 901 F.2d 642, 646 (8th Cir. 1990). Plaintiff's allegations, unsupported by factual evidence, do not create a genuine issue of fact sufficient to withstand summary judgment. Accordingly, Defendants' Motion on this point is granted.

2.    <u>Constitutional Rights</u>

Plaintiff's Complaint alleges the following constitutional violations: excessive use of force, unreasonable seizure, summary punishment, violation of due process, deprivation of liberty rights and interests, and violation of his right to equal protection. To prevail on a § 1983 claim, Plaintiff must demonstrate that a person acting under color of state law violated a right protected by the Constitution. <u>City of Oklahoma City v. Tuttle</u>, 471 U.S. 808, 816 (1985). Section 1983 creates no substantive rights; "it merely provides remedies for deprivations of rights established elsewhere." <u>Id.</u> (citing <u>Baker v. McCollan</u>, 443 U.S. 137, 140, 144 & n.3 (1979)). Although the Complaint briefly references the First, Fifth, and Eighth

Amendments, Plaintiff's claims arise under the Fourth and Fourteenth Amendments.   Indeed, Plaintiff's Memorandum addresses only the excessive force claim.   (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 7-9.)

Defendants contend that they are entitled to qualified immunity.   Because "[t]he entitlement is an immunity from suit rather than a mere defense to liability," Mitchell v. Forsyth, 472 U.S. 511, 526 (1985), the question of immunity must be resolved "at the earliest possible stage in litigation," Hunter v. Bryant, 502 U.S. 224, 227 (1991) (citations omitted) (finding the question appropriately decided on motion for summary judgment).   The Court must make a three-part inquiry to determine if Defendants are entitled to qualified immunity: (1) whether Plaintiff has asserted a violation of his constitutional rights; (2) whether the allegedly violated constitutional right was clearly established; and (3) whether there are no genuine issues of material fact as to whether a reasonable official would have known that the alleged acts violated that right.   See Foulks v. Cole County, 991 F.2d 454, 456 (8th Cir. 1993). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."   Saucier v. Katz, 533 U.S. 194, 201 (2001).  Here, Plaintiff's claims fail for want of a constitutional violation.

a.      Fourth Amendment

Plaintiff claims that he was subjected to excessive force during his arrest.   The right to be free from excessive force is a clearly established right under the Fourth Amendment. Crumley v. City of St. Paul, 324 F.3d 1003, 1007 (8th Cir. 2003).  However, "the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of

10

physical coercion or threat thereof to effect it." Graham v. Connor, 490 U.S. 386, 396 (1989). Not every shove or push violates the Fourth Amendment. Id. The Court must evaluate the totality of the circumstances to determine whether the officers' actions were objectively reasonable in light of the circumstances. Greiner v. City of Champlin, 27 F.3d 1346, 1354 (8th Cir. 1994). "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain and rapidly evolving – about the amount of force that is necessary in a particular situation." Graham, 490 U.S. at 396-97. Relevant considerations include the severity of the crime, whether the suspect posed a threat to the safety of both the officers and others, and whether the suspect was resisting arrest. Foster v. Metro. Airports Comm'n, 914 F.2d 1076, 1082 (8th Cir. 1990). When a suspect "flees or resists, some use of force by the police is reasonable." Greiner, 27 F.3d at 1355 (citing Foster, 914 F.2d at 1082).

In the present case, Officer Babekuhl clearly did not use excessive force in detaining Plaintiff. When Plaintiff saw the officers, he started to run while holding on to an object in his waistband, which Officer Babekuhl thought was a gun or drugs. The area is known for narcotics trafficking. Plaintiff ran for about three blocks before entering a porch of a duplex. Officer Babekuhl instructed Plaintiff to freeze, but Plaintiff ignored the command, went in the house, and locked the door. Considering Plaintiff's refusal to obey the officer, the possibility that he was armed, and his measures to evade arrest, Officer Babekuhl was not unreasonable in ordering Plaintiff to freeze at gunpoint. Plaintiff did not heed the officer's instructions; rather, he locked himself in the house. When Officer Babekuhl entered the house, he did use

11

force and threats to subdue Plaintiff, but he had a right to use a degree of physical coercion and threats considering that he was the sole officer on the scene and that two bystanders, one of whom was a child, were present in the house.   The circumstances were tense, uncertain, and rapidly evolving.   Viewed in the light most favorable to Plaintiff, the Court cannot conclude that the force and threats employed were excessive.   After Plaintiff was handcuffed, Officer Babekuhl held him by the arm and dragged him toward the door.   Considering Plaintiff's previous resistance, this force was not excessive.   Notably absent from Plaintiff's deposition testimony is an averment that he attempted to leave the house willingly and on his feet.   Once at the door, Officer Babekuhl assisted Plaintiff to his feet, and Plaintiff walked out to the police car.

The officers' actions at the squad car present a closer question.   According to Plaintiff, one of the officers slammed Plaintiff's head into the squad car while Plaintiff was yelling to his girlfriend.   The officer was trying to bend Plaintiff over the trunk to pat-search him. Considering Plaintiff's previous evasion and resistance and his shouting to an onlooker, it was not excessive for the officer to force Plaintiff's head on to the trunk so that he could be searched.   "Although in hindsight such force might not have been necessary," the Court may not judge the conduct in hindsight but must consider the circumstances at the time.   See Foster, 914 F.2d at 1082-83 (citing Graham v. Connor, 490 U.S. at 396).   Even viewing the facts in the light most favorable to Plaintiff, the officers' actions at the squad car do not constitute a violation of Plaintiff's constitutional rights.

However, even if the Court were to find fault with the officers' conduct, Plaintiff only sustained, at most, minimal injury as a result of the force.    A plaintiff's de minimus injury "is insufficient to support a finding of a constitutional violation."    Crumley, 324 F.3d at 1007 (citing Hunter v. Namanny, 219 F.3d 825, 831 (8th Cir. 2000); Curd v. City Court, 141 F.3d 839, 841 (8th Cir. 1998)).    For example, "allegations of pain as a result of being handcuffed, without some evidence of more permanent injury," are insufficient to support a Fourth Amendment violation.    Foster, 914 F.2d at 1082.    In Foster, the plaintiff claimed that he was twice pushed against a wall while handcuffed and that he suffered nerve damage because of the handcuffs.    Id.    However, the plaintiff had no medical records to support his claims of long-term injuries.    Id.

Here, Plaintiff has not shown that he suffered more than temporary, minimal injuries. Notably, Plaintiff provided no medical records with his Memorandum in Opposition.    When the Court asked Plaintiff's counsel at the hearing if there were any medical records substantiating Plaintiff's claimed injuries, counsel indicated she had recently received one report, which she would file after the hearing for the Court's consideration.    The Court has reviewed the report and finds that Plaintiff neither complained of nor received treatment for injuries which would be consistent with having his head slammed on the trunk of a car.    Two days after the incident, Plaintiff complained only of pain on his left side.    He was diagnosed with a chest wall contusion, but X-ray results were negative.    Plaintiff was discharged approximately three hours later, ambulatory and pain free.    Thus, Plaintiff's only substantiated injury is a temporary bruise on his chest.    Plaintiff has no evidence that he ever sought or

received additional medical treatment for back problems, facial injuries, head injuries, chest pain, internal bleeding, or any other injuries.   In the absence of such evidence, Plaintiff cannot establish a Fourth Amendment claim of excessive force.   See id. at 1082-83.   The officers are therefore entitled to qualified immunity as a matter of law because Plaintiff has not established a constitutional violation.

Even if Plaintiff's claims rose to the level of a constitutional violation, Officer Ruud and Officer Babekuhl would nonetheless be entitled to qualified immunity because the particular right at issue is not "clearly established."   This element must be analyzed "in light of the specific context of the case, not as a broad general proposition."   Saucier, 533 U.S. at 201.   The law undisputably establishes that use of excessive force is unconstitutional.   Id. at 202.   Thus, to succeed on a particularized showing, a plaintiff must show that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."   Id. (citing Wilson v. Layne, 526 U.S. 603, 615 (1999)).

Here, Plaintiff evaded the pursuing officers and locked himself in a house.   Officer Babekuhl believed Plaintiff was armed or possessed narcotics, and Plaintiff refused to obey the officer's orders.   Pointing a gun at Plaintiff and ordering him to "freeze" was not clearly unreasonable under these circumstances.   Once Officer Babekuhl entered the house, he used some measure of force and threats to get control of Plaintiff and remove him from the house. Officer Babekuhl was the sole officer present at the time, and there were two bystanders in the house.   Considering these facts in addition to Plaintiff's past evasion, resistance, and failure to obey, the officer's actions would not constitute clearly unlawful conduct to a reasonable

officer.   At the squad car, one of the officers allegedly slammed Plaintiff's head on the car trunk while attempting to pat-search him and while Plaintiff was yelling to his girlfriend. Again, the Court cannot conclude that this conduct would be clearly unlawful to a reasonable officer, based on Plaintiff's previous conduct and his continued unruliness as he yelled to his girlfriend.   Finally, Plaintiff suffered no more than temporary, minimal injuries from any of the officers' actions, which further demonstrates that the particular right at issue in this case was not clearly established.   See Saucier, 533 U.S. at 209.

        b.     Fourteenth Amendment

Plaintiff has alleged in the Complaint that he was denied equal protection of the law in violation of the Fourteenth Amendment.   Plaintiff did not address this claim in his Memorandum, and only a brief discussion is necessary to resolve it.   To state an equal protection claim, Plaintiff must demonstrate that persons who are similarly situated were treated differently by Defendants and that Defendants had no rational basis for the difference in treatment.   See Moreland v. United States, 968 F.2d 655, 660 (8th Cir. 1992).   Simply, Plaintiff has provided no evidence in support of this claim.   Accordingly, Defendants are awarded summary judgment on Plaintiff's claim under the Fourteenth Amendment.

        3.     Failure to Prevent

Plaintiff avers that the Defendant officers failed to prevent each other from committing constitutional violations against him.   (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 12.)   This claim assumes that an officer violated Plaintiff's constitutional rights.   See Hawkinson v. Anoka County, No. 03-4416, 2004 WL 2453046, at *5 (D. Minn. Oct. 24, 2004) (Magnuson,

J.).   As noted above, because there are no constitutional violations, Defendants are entitled to summary judgment on this claim.

**C.      42 U.S.C. § 1985**

Plaintiff has claimed that his civil rights were violated under 42 U.S.C. § 1985(3).   To establish a claim under § 1985, Plaintiff must demonstrate: (1) a conspiracy; (2) for the purpose of depriving another of equal protection of the law; (3) an act in furtherance of the conspiracy; and (4) an injury to a person or property, or deprivation of a legal right.   See Federer v. Gephardt, 363 F.3d 754, 757-58 (8th Cir. 2004).   Claims under § 1985(3) require Plaintiff to prove a racial- or class-based animus.   See Griffin v. Breckenridge, 403 U.S. 88, 102 (1971).

In Plaintiff's Memorandum in Opposition, he concedes that there is not a sufficient factual dispute to survive summary judgment.   (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 6 n.1.)   The Court agrees.   Plaintiff has no evidence of a conspiracy.   He has not demonstrated an intent to deprive him of equal protection.   Plaintiff has no evidence of racial- or class-based animus, and Plaintiff has not shown an injury or a deprivation of a legal right.   Consequently, the §1985(3) claim fails as a matter of law.

**D.      State Law Claims**

Plaintiff asserts claims of assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress.   All of   Plaintiff's state law claims fail as a matter of law.

1.       Assault and Battery

16

Plaintiff's claims of assault and battery are barred by the doctrine of official immunity. Official immunity is available to public officials if their acts are discretionary, and they do not act maliciously or willfully.   See Johnson v. Morris, 453 N.W.2d 31, 41-42 (Minn. 1990). When an official's duty is ministerial rather than discretionary, official immunity will not apply.   Watson v. Metro. Transit Comm'n, 553 N.W.2d 406, 414 (Minn. 1996).   Whether a duty is ministerial is a question of law.   See Miskovich v. Indep. Sch. Dist. 318, 226 F. Supp. 2d 990, 1020 (D. Minn. 2001) (Erickson, Mag. J.).   Generally, an officer performing his or her duty to prevent crime and enforce the law is exercising discretion.   Id.; Gleason v. Metro. Council Transit Operations, 582 N.W.2d 216, 220 (Minn. 1998) (noting that official immunity is "regularly applied to the judgment required of police officers in discharging their duties").

In this case, Plaintiff concedes the officers had discretion to chase and arrest him. (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 17.)   Plaintiff contends, however, that the procedures by which an officer handcuffs and transports a person are ministerial, citing the Minneapolis Police Department Manual.   An officer's duty is ministerial "when it is absolute, certain and imperative, involving merely execution of a specific duty arising from fixed and designated facts."   Cook v. Trovatten, 274 N.W. 165, 167 (Minn. 1937) (citations omitted). The Court does not agree with Plaintiff's characterization of handcuffing and transporting procedures as ministerial.   An officer must continue to exercise his discretion during handcuffing and transport depending on many circumstances, including the amount of resistance or lack of cooperation from the individual.   The behavior of suspects during handcuffing and transport cannot be classified as "fixed."   Moreover, the existence of a written

17

protocol "does not transform an otherwise discretionary act into a ministerial one.   Field-level actions taken by public officials may be discretionary even when there are extensive regulations that dictate procedure."   Bailey v. City of St. Paul, 678 N.W.2d 697, 702-03 (Minn. Ct. App. 2004) (citing Kelly v. City of Minneapolis, 598 N.W.2d 657, 665 (Minn. 1999)). Finally, the portions of the Manual cited by Plaintiff (Pl.'s Mem. Opp'n Defs.' Mot. Summ. J. at 18) do not transform the acts of handcuffing and transport into ministerial duties.   One provision requires officers to use no more force than necessary (Woolman Aff. Ex. C at 1), which by its terms requires the exercise of discretion.   The other provision instructs officers to view the facts and circumstances of each case in pursuing a fleeing suspect (id. at 2), which likewise necessarily requires the exercise of discretion.   The actions of Officer Ruud and Officer Babekuhl were discretionary.

Additionally, Plaintiff has not established that the actions of Officer Ruud and Officer Babekuhl were willful or malicious.   In the context of official immunity, the terms willful and malicious are synonymous.   Rico v. State, 472 N.W.2d 100, 107 (Minn. 1991).   To show "malice," Plaintiff must show that the officers intentionally violated a known right.   Id. (quoting Carnes v. St. Paul Union Stockyards Co., 205 N.W. 630, 631 (Minn. 1925)).   The Court has already concluded that Officers Babekuhl and Ruud did not violate Plaintiff's constitutional rights.   Thus, the officers are entitled to official immunity.   Because the officers are entitled to official immunity, the City of Minneapolis is likewise afforded vicarious official immunity. See Miskovich, 226 F. Supp. 2d at 1025.

     2.     Emotional Distress

Intentional infliction of emotional distress requires Plaintiff to prove that the: (1) conduct was extreme and outrageous; (2) conduct was intentional or reckless; (3) conduct caused emotional distress; and (4) distress was severe. Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983). The conduct must be so "atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Id. at 439 (citations omitted). Here, the alleged conduct, viewed in the light most favorable to Plaintiff, is not so extreme or outrageous that it passes the boundaries of decency. Moreover, Plaintiff has provided no evidence of severe emotional distress. Thus, the claim fails as a matter of law.

Plaintiff also states a claim for negligent infliction of emotional distress. This cause of action requires a plaintiff to prove that he was within a zone of danger of physical impact, reasonably feared for his safety, and consequently suffered severe emotional distress with resultant physical injury. Stadler v. Cross, 295 N.W.2d 552, 553 (Minn. 1980). Here, Plaintiff has no evidence of either severe emotional distress or a resultant physical manifestation of such distress. Plaintiff's claimed physical injuries relate only to the alleged battery. Plaintiff has not come forth with the requisite facts to withstand summary judgment on his claim for negligent infliction of emotional distress. Moreover, the Defendant officers are entitled to official immunity for negligent acts. See Dennen v. City of Duluth, 350 F.3d 786, 792-93 (8th Cir. 2003). As with Plaintiff's claims for assault and battery, the City of Minneapolis is entitled to vicarious official immunity on the negligent infliction of emotional distress claim. See Miskovich, 226 F. Supp. 2d at 1025.

**CONCLUSION**

Plaintiff has not demonstrated that a genuine issue of material fact remains for trial, and Defendants are entitled to a judgment as a matter of law on all claims.  Accordingly,

based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that

Defendants' Motion for Summary Judgment (Clerk Doc. No. 12) is **GRANTED**.


**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated: September 27, 2005

s/ Paul A. Magnuson

Paul A. Magnuson

United States District Court Judge
